**FILED**

Aug 13 2020

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ jllr          DEPUTY

CIVIL NO. **'20CV1568 JLS  KSC**

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

---

**MAXWELL JOELSON, and**
**JUAN VALDEZ,**
And On Behalf of All others
Similarly situated.
Plaintiffs.˙

**vs.**

**UNITED STATES OF AMERICA,** [1]
Defendant.
**(government entities,**
**DEPARTMENT OF JUSTICE,**
**FEDERAL JUDICIARY (U.S Courts),**

---

**TORT ACTION PURSUANT TO:**
**FEDERAL TORT CLAIM ACT,**
**ALIEN STATUTE ACT, AND/OR, FOR**
**DECLARATORY JUDGMENT, PRELIMINARY**
**INJUNCTION, OR MANDAMUS RELIEF**
**Jury Trial Demanded**
**(for all non-federal tort act claims)**

---
===============================================

Maxwell Joelson
5121 Caywood St.
San Diego, CA 92117
Maxwellyoga2014@yahoo.com

[1] continued on next page………

1

[1]/ **UNITED STATES JUDICIAL COURT OFFICERS**
**(acting within the course and scope of their employment over**
**the course of plaintiffs post trial and post-habeas proceedings)**
***Court Officers Parties to Joelson's and Valdez's Post-trial and Post-habeas Processes***
*JOELSON'S JUDICIAL COURT OFFICERS*: **Asst. U.S. Attorney's:** *Daniel Levin* (§2255);
*Gonzalo P. Curiel* (2002) Rule 60(b) and 2005 §3582(c)(2)); *Tim Laske* (2010 declaratory
complaint and mandamus relief); *Amanda Liskamm* (2011 audita querela); *Anne Carley
Palmer* (2016 Rule 60(b)(4)/(b)(6); *Tim Laske* (2018 complaint for declaratory injunction
or for writ of mandamus. **U. S. District Court Judges**: *David W. Williams* (decease)
§2255, §3582(c)(2) and motion pursuant to 41(e); *David O. Carter* (2002 and 2016 Rule
60(b)'s, 2005 §3582(c)(2) and 2011 Audita Querela); *Andrew J. Feess* (2010 and 2018
complaint declaratory injunction and mandamus relief);); *Virginia A. Phillips* (2018 Rule
60(b) to vacate denial ruling on the 2009 complaint; *Andrew J. Guilford* (2018 declaratory
complaint/mandamus; *Cormac J. Carney* (on three request to recuse/disqualify Judge
David O. Carter). **United States (acting) Solicitor General**: Neal k. Katyal (answering the
Supreme Court's 2010 request to respond to Joelson's petition for writ of certiorari on the
denial of his declaratory/madamus request); **Circuit Judges**: *Trott, MCkeown, Kozinski,
Rymer, Fisher, Browning, Kleinfeld, Candy, Gould, Tallman, Schoreder, Thomas, Graber,
Goodwin, Farris, Friedland, Leavy, Silverman, Hawkins, N.R. Smith, Rawlinson,
Callahan.*

*VALDEZ'S JUDICIAL COURT OFFICERS*: **Asst. U.S. Attorney's:** *Richard L. Pomeroy, E.
Bryant Wilson, Steven E. Skrock;* **Federal District Judges***: (for District of Alaska) James
K. Singleton (§2255, Rule 60(b), and §3582©(2); Timothy M. Burgess (2018 declaratory
complaint and mandamus relief); (for the Eastern District of California) Lawrence J.
O'neill, and (**Magistrate Judges**) Sheila K. Oberto, Jennifer L. Thurston (28 U.S.C.
§2241):* **Ninth Circuit Judges:** *Richard A. Paez, Jay B. Bybee* and Mary M. Schroder,
William A. Fletcher (denying COA request on 2255 denial); *Richard R. Clifton, Randy
Smith, Michelle T. Friedland (summary order denying appeal complaint); William C.
Canby, Barry G. Silverman, and Ran Randy Smith, M. Margaret MCkeown, N. Barry G.
Silverman, John B. Owens (summarily denying second 2241).*

II

# TABLE OF CONTENTS

**CONTENT**                                                                     **PAGE**

United States Court Officers……………………………………………………...……ii

Preliminary Statement…………………………………………..……………….…..1

Jurisdiction and Venue……………………………………………………………...5

Statute of Limitations……………………………………………………………….6

Jury Demand…………………………………………………………………............8

Parties………………………………………………………………..……………..8
　　Plaintiff Joelson…………..………………………………………..……...…9
　　Plaintiff Valdez…………………………………………………………........15

First Cause of Action (on Joelson)
　　United States Breached the Duty to Care………………………...…………….19

Second Cause of Action
　　United Statest Breached its own Duty to Care and
　　Aided and Abetted the Breach of Fiduciary Duty ………………………….…..28

Third Cause of Action
　　Prolong Detention …………………………………………..…………………29

Fourth Cause of Action
　　Reckless Negligence………………………………………………………….....31

Fifth Cause of Action
　　Defendant Created a Foreseeable Peril………………………………………….32

Sixth Cause of Action
　　Oppression/Malice……………………………………..………….…………….34

Seventh Cause of Action
　　Negligent Supervision……………………………………………....…………..35

Eight Cause of Action
　　Failure to Implement Appropriate Policies
　　And Lack of Duty to Care…………………………………………………….....37

Ninth Cause of Action
　　Reckless Indifference to Joelson's
　　Clearly established state and federal rights…………………………………….37

III

Tenth Cause of Action
    Misconduct by Defendant Permeated all post-trial
    And post-habeas judicial review processes………………………………….…..38

Eleventh Cause of Action
    Valdez's Tort for Reckless Negligence,
    Oppression, deliberate indifference Upon
    the Duty to Care and on Duty to Disclose………..…………………………....40

Twelfth Cause of Action
    Defendant Interfered with Valdez's Right to petition
    The Government and the Ultra-vires Actions Suspended
    The Privilege to the Great Writ and that of the Equal Protection Clause…………..43

Thirteenth Cause of Action
    Negligence of Foreseeable Harm, Relief
    in the Public Interest and for damages………………..………………………44

Fourteenth Cause of Action
    Breach of Fiduciary Duty, Prolong Detention,
    And Intentional Infliction of Emotional Distress…………………………………45

Fifteenth Cause of Action
    Defendant's Illegal Pattern or Policies………………………………………45

Sixteenth Cause of Action
    Plaintiffs Tort is the Only Alternative Remedy to
    Correct United States Misconduct and for Damages to
    Remedy Violations Under State and Federal Law……... …………………..46

Seventeenth Cause of Action
    Alien Tort Statute/ Violation of the Law of Nations………………………….48

Eighteenth Cause of Action
    Class Action Allegations………………………………………………….50

Nineteenth Cause of Action
    Further Relief is Necessary Due to the Oft-repeated and
    Foreseeable Harm by the Defendant for a Declaratory
    Judgment, Preliminary Injunction, or Mandamus………………………….53

Prayer for Relief……………………………………………………………56

Demand for Jury Trial……………………………………………………...57

Certification and Closing………………………………………………….57

Exhibits in Support………………………………………………………58

IV

# PRELIMINARY STATEMENT

**1.** This tort is in more ways than one, a "whistleblower" complaint, that outlines causes of the first impression about the endemic, systemic, rampant, and pervasive misconduct by the defendant United States of America [herein-after "**USA"**] over the course of decades upon plaintiffs [herein after "**Joelson or Valdez**"] and Class Members [herein after "**class members**" similarly situated] where the defendant's agencies employees [from the Department of Justice ["**DOJ"**] and the Federal Judiciary] continuously acted ultra-vires while in their scope of their official capacities  as Assistant United States Attorney's assigned to plaintiffs' post-trial and post-habeas processes and the federal judges presiding over those cases at the district level and  with the Ninth Circuit over the course of 22 and 16 years [respectively on Joelson's and Valdez's]  post-trial and post-habeas litigation— the post-habeas record reveals that after plaintiffs' denial of their habeas corpus they sought diligently redress of grievances on subsequent post-habeas relief requests [unfortunately to no avail] where they questioned the "*integrity of the habeas*" fact-finding process.

**2.** However, United States court officers [as Does 1-50] rather than safeguarding and protecting Plaintiffs' and class members as established by law, civil rules, and statutory rights,  they [individually/jointly, or by aiding and abetting] casually opted instead to "**continuously**" breach their "*duty to care*" in  protecting plaintiffs' procedural constitutional  rights: as a consequence of this breach,  the government not only *betrayed their solemn oath to the Constitution* and their own obligation of "*duty to care*" by failing to abide by federal and state constitutional  and statutory law, but in addition [among

- 1 -

others] the USA ignored to undertake and adopt established federal law, policy and regulations, those under the fairness and ethical principles, Judges Canons, the American Bar Association ["ABA"] standards and Rules of Professional Responsibility Conduct.

**3.**    USA judicial court officers  [and Does 1-50] either as individuals/collectively [or by aiding and abetting] acted in a manner  to ***continue a pattern of reckless negligence in performing their  operational tasks***,  causing plaintiffs' and class members to be injured [*inter alia*] by the defendants' "deliberate ***indifference:***" to ***prolong detention---by their oppression of the judicial process, failing to disclose, facilitating inadequate procedural bars that "manifest an injustice,"  suspension  of  the  clauses  upon  the  privilege  of  the great writ and that of the Equal Protection of the laws.***

**4.**    The United States judicial court officers acted  ultra vires  [when Asst. U.S. Attorney's either as individuals, jointly, or by aiding and abetting]  infringed upon plaintiffs' and class members 1) *liberty interest* when they egregiously oppressed the post-trial and post-habeas judicial review proceedings from been fair and equitable; 2) *intentionally abused the judicial process* by oppressing, interfering and impeding a fair judicial review process, when they intentionally concealed, omitted, and misrepresented factual facts and law to the post-trial and post-habeas judicial courts on their opposition pleadings; and, 3) due to the *special relationship* the **federal judges arbitrarily relied** upon the Asst. U.S. Attorney's deceitful misinformation and suppression of material facts on their moving papers as factual during the courts fact-finding processes---as such, the misconduct 1) *undermined the integrity of the judicial proceedings; 2) actually obstructed the federal judge's*

- 2 -

*performance of their judicial duty; and, 3) the reliance, omissions, or the inactions to correct the Asst. U.S. Attorney's ill conduct, asserts that the federal judges' breached their duty to care to plaintiffs' protected rights during the judicial review processes [by holding inadequate and ineffective fact-finding processes].*

**5.** The USA judicial court officers [Asst. U.S. Attorney's] pervasive pattern of misconduct to oppress, obstruct, misrepresent, mislead, omit, and conceal induced a reliance upon the federal courts [a third party] to inadequately procedurally bar both the plaintiffs' relief requests either under the relitigation rule and/or on AEDPA's strict provisions pursuant to successive §2255's.

      **a.** The USA judicial court officers fundamentally ignored and disregarded the proffered non-record material [and in Joelson's case also key portions of the resentencing transcript] submitted in support of the underlying claims from the both in the pleadings and during the reviewing courts fact-finding processes. Consequently, denying to the plaintiffs' [and class members] any assurance in obtaining an ***honest service*** by federal court officers [from both the Asst. U.S. Attorney's and the federal judges presiding on plaintiffs' post-trial and post-habeas judicial processes]:such illegal process [among others] *caused upon the plaintiffs' [and class members] a prolong detention, suffer cruel and unusual punishment, infliction of emotional distress and collateral conviction consequences---in large part due to the United States judicial court officers oppression of the administration of justice and because the judicial court officers infringed and interfered upon the privilege of the habeas corpus and that of the Equal Protection of Law.*

**6.**     The United States  judicial court officers   cumulative ultra-vires actions and **respondeat superiors non-actions** [due  to the implementation of **Protocol 745** by the Department of Justice ["**DOJ**"]], should have **foreseen** that the plaintiffs' federal and state constitutional rights would be violated and "**SUSPENDED:**" inter alia, because plaintiffs' were precluded from obtaining a meaningful review process, where *1) the plaintiffs' were impeded upon their ability to prosecute the direct appeal claim at an "initial-review" habeas proceeding; 2) as a result of factor (1) an excessive delay has transgressed on the direct appeal claim; since 3) the direct appeal issues have not been adjudicated on the merits by the Ninth Circuit; thus 4) the finding of guilt has not been finalized or  in Valdez's case whether the lower court's sentencing was retroactive on direct appeal; 5) due to lapses in factors 1-4 the rightful benefit to plaintiffs access to both the full "privilege of the habeas corpus" and that of the "Equal Protection of the Laws has been revoked illegally by defendant USA*; and, 6) due to the defendant's court officers ultra-vires actions and the plaintiffs' diligence in seeking relief with the federal courts [without recourse] for more than a decade the [un]availability of  adequate alternative remedies provides the creation of a tort cause of action for damages and relief to make Joelson's legal status whole again in the circumstances presented herein.

**7.**     The United States judicial court officers [as Does 1-50] ultra-vires actions violated a *jus cogens* norm of international law pursuant to the *Alien Tort Statute* where the judicial court officers   individually or jointly practiced and condoned   *"arbitrary prolong detention"* upon the plaintiff's and the defendants' breach of international norms  to provide

- 4 -

the plaintiffs' with "safe conduct" [by denying justice] while inside the United States for almost two decades---it must be noted, plaintiffs' are entitled to ATS relief because they are aliens [non-U.S. citizens].

## JURISDICTION AND VENUE

**8.**     This Court has jurisdiction over Plaintiffs' tort against the United States [when relevant either "**Joelson**" or "**Valdez**" ] claims under 28 U.S.C. §1331 (federal question jurisdiction) for injunctive relief to restrict defendants' unlawful acts , 28 U.S.C. §1332 (diversity jurisdiction), and pursuant to 28 U.S.C. § 1343 (3), a federal district court has jurisdiction, among other things, to entertain a suit to recover damages suffered by reason of the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States. Under 28 U.S.C. § 1343(4), a federal district court has jurisdiction, among other things, to entertain a suit to recover damages under any act of Congress providing for the protection of civil rights. And, 28 U.S.C. §1346 and §2674 (Federal Tort Claims Act); and, under the Declaratory Judgment Act, 28 §§ U.S.C. 2201-2202 or Mandamus relief, 28 U.S.C. §1651.

**9.**     This action is brought in part pursuant to the Alien Tort Statute [28 U.S.C. §1350 (Alien Tort Claims Act)] for violations to *arbitrary detention* and *safe conduct* under common law and the law of nations ["***Jus cogens***"]. The Alien Tort Act, 28 U.S.C. § 1350, enacted as part of the First Judiciary Act of 1789, provides: The district courts shall have original jurisdiction of any civil action by an alien [that is foreign born] for a tort only, committed in violation of the law of nations or a treaty of the United States.

**10.**     Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391(a)(3), 28 U.S.C. § 1391(b)(1) and (b)(3), and 28 U.S.C. § 1391 since Joelson and defendant [judicial court officer Judge Gonzalo P. Curiel] works and lives in the San Diego and the events or omissions giving rise to the claims alleged herein occurred within the Ninth Circuit Court of appeals.

## STATUTE OF LIMITATIONS

**11.**     The ***FTCA's*** statute of limitations (both the two-year time limit after accrual for presenting claims to the administrative agency and the six-month time limit for suit after denial of a claim by an agency) is not jurisdictional, but instead is subject to equitable tolling. ***United States v. Wong, 135 S. Ct. 1625 (2015).*** Here, plaintiffs' have both filed their 95 forms with both the Department of Justice, Chief Counsel from the Office of Professional Responsibility and Office of General Counsel for the Administrative Oversight of the United States Courts within the 2-year time limit [SEE: E.R. 57-65b] and the instant action has been filed within the 6-month time limit after the denial from the agencies in question---where they failed to make a final disposition of plaintiffs' administrative claims.

**12.**     Because this Court has supplemental jurisdiction over Plaintiffs' state law claims, it must apply California's and Alaska's substantive law to those claims [***Mason Dixon Intermodal Inc. v. Lapmaster Int'l LLC, 632 F.3d 1056, 1060 (9th Cir. 2011)***]; and, upon those applicable doctrines under equitable tolling and that of the continuing and repetitious unlawful acts by the defendants.

- 6 -

**13.** Since the defendant's employees were and are currently Asst. U.S. Attorney's and federal judges the Attorney General should certify that these federal employees were "acting within the scope of their office or employment at the time of the incident out of which the claim arose," which will cause the previous and current federal employees be dismissed as defendant's and the United States substituted as the defendant. 28 U.S.C. § 2679(d)(1). Clearly the Westfall Act "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborne v. Haley, 127 S. Ct. 881 (2007)* (citing § 2679(b)(1)).

**14.** **The Alien Tort Claim Act** ["ATS"], has a 10-year statute of limitations based on the Torture Victim Protection Act of 1991. *Papa v. United States, 281 F.3d 1004, 1012-13 (9ʰ Cir. 2002).* The ATS states in its entirety: "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or treaty of the United States." *Sosa v. Alvarez-Machain, 124 S. Ct. 2739, 2755 (2004).* Due to its jurisdictional nature, the ATS does not provide an independent cause of action; instead, it grants jurisdiction to district courts "on the understanding that the common law [will] provide a cause of action for [a] modest number of international law violations." *Id.* at 124 S. Ct. at 2761. Consequently, the ATS empowers federal courts to recognize private claims under federal common law, when the claims sufficiently state an international law violation [here *arbitrary detention* and *safe conduct*] "with the requisite definite content and acceptance among civilized nations." *Kiobel v. Royal Dutch Petroleum Co., 133 S. Ct. 1659, 1663 (2012);* in short, section §1350 does not require that

- 7 -

the action `arise under' the law of nations, but only mandates a `violation of the law of nations' in order to create a cause of action"[ ***In re Estate of Fernando Marcos, 25 F. 3d 1467, 1475 (9th Cir. 1994)***].

### JURY DEMAND

**15.**    Plaintiffs demand trial by jury with respect to all claims in this action, with the exception of Federal Tort Claims Act.

### PARTIES
*Defendant/Plaintiffs*

**16.**    ***Defendant***: At all relevant times, the defendant, the United States of America, acting through its agency, the Department of Justice and Federal Judiciary Courts, in an ultra-vires manner of negligence, oppression, and omission as alleged herein in order to prolong plaintiffs [and class members] detention.

**17.**    Plaintiffs' and designated class members as current and prior federal inmates have been injured by the United States [agencies] callous *breach of duty to care* from Assistant U.S. Attorney's representing the United States and federal judges presiding over the plaintiffs' post-trial and post-habeas relief requests, that has caused an ***oppression*** and ***prolong detention***, the "***suspension***" of the great writ, ***violation of the Equal Protection Clause***, and due to the "usual" procedural framework ***the direct appeal process has not been finalized [as well as the conviction]***---which arose from the defendants' ultra-vires actions [either as individuals/jointly or in aiding and abetting] in a *continued pattern to oppress, obstruct and impede the administration of justice [by abusing the judicial process with deceit and omissions of the truth], and acting fraudulent upon the courts*: thereby,

- 8 -

interfering upon the plaintiffs' rights *to prosecute their direct appeal claim at an "initial-review" proceeding* or at any subsequent post-habeas processes.

18.    The defendant's ultra-vires actions during the habeas process irreparable harmed the plaintiffs' on their subsequent post-habeas fact-finding judicial reviews since those proceedings were also held in a manner that was unfair, defective, and inaccurate, under [*inter alia*] the Constitution, federal statutory law, precedential law from both the Ninth Circuit and Supreme Court and Habeas Rules---it must be noted, this action is about the ***illegal procedures*** acted upon on Plaintiffs' post-trial [and post-habeas] judicial review processes, where the record establishes that the pattern of *ultra-vires* conduct by the defendants' was a *deliberate indifference* to a prolong detention by interfering with plaintiffs' fundamental right to their ***liberty interest***, and upon both the ***privilege of the great writ*** and "***Equal Protection Clause***" pursuant to California's and the United States Constitution.

19.    ***Plaintiff Joelson***: On July 20, 1990, Joelson was arrested by the DEA and was charged under 21 U.S.C. §§841(a)(1) and 846, for possession and conspiracy to distribute, and §§960, 953, for importation of illegal drugs and conspiracy to import cocaine, and aiding and abetting under 18 U.S.C. §2. [criminal docket ***CR 90-0565-DOC***] On February 12, 1991, Joelson after a four-day trial was found guilty by a jury. On June 1991 Joelson was sentenced to four concurrent life terms of imprisonment.

20.    On October 12, 1993 the Ninth Circuit affirmed the conviction and remanded for resentencing due to an illegal sentencing enhancement under U.S.S.G §2D1.1(b)(2).

[*United States v. Joelson*, *7 F.3d 174 (9th Cir. 1993*—E.R. 1-4*)]. Upon remand, Joelson on May 1994 Joelson was resentenced to a term of 360 months and five years of supervised release. Joelson again appealed and the Ninth Circuit affirmed, finding that the district court was correct in not considering the issues that were not included in the Circuit's instruction. *United States v. Joelson (Joelson II)*, *60 F.3d 835 (9th Cir. 1995)(unpublished* opinion).

**21.**    Shortly after Joelson filed a Rule 60(b) and a supplemental 2255---since Joelson had requested permission from the habeas court to file only sentencing issues and the court failed to notice the request---the habeas court on July 1997 vacated the prior ruling. On August 27, 1998, on a consolidated order denied Joelson's §2255. [Case No. *96 CV-3437-DOC*]. E.R. 5-11.

**22.**    After Joelson filed the appeal on the denial of the habeas petition, the district court on 1999 and the Ninth Circuit on 2001 denied Joelson's requests for a COA. On March 2002, Joelson filed his first Rule 60(b) claiming that the habeas fact-finding process was inadequate because the government acted fraudulently upon the court by failing to disclose and misrepresenting factual facts to the habeas court [E.R. 12-13] made the judicial review findings not only inadequate and defectives but the ruling of the claims not an adjudication on the merits---the lower court denied the motion along with the COA request [E.R. 14-21]---the Ninth Circuit as well as the High Court denied the COA's requests.

**23.**    Joelson, despite the denial by the district court on the 2002 Rule 60(b) and on his requests for a COA with both the lower court and Ninth Circuit, Joelson sought multiple relief for redress through motions for COA's, three reconsiderations under Rule 60(b)'s.

two mandamus, motions to recall the mandates on Joelson I and II, three motions for recusal on judge Carter, numerous petitions for certiorari, two complaints for declaratory injunction and mandamus relief [case No's **CV 18-0077-AG and  CV 09-*01042-GAF--- copy of complaint and denials E.R. 20-44***], and a request filed October 11, 2011, for writ of audita querela [case No. ***CV 11-1627-DOC***]   with the appropriate motions for reconsideration of those denial actions and appeals from those denials, three motions with the Ninth Circuit for permission to file successive §2255's---it must be judicially noted, Joelson  after the denial of his habeas and requests for COA with the Ninth Circuit,  has sought relief with the Ninth Circuit over the course of 22 years twenty-one (21) times [E.R. 70-73] without a single appellate or motions panel actually reviewing and determining Joelson's specific claims and his proffered non-record material in support of his claims that 1) *the integrity of the habeas process was in question due to the government's acted fraudulent upon the courts;* and, 2) whether the habeas court in ignoring and disregarding in considering  Joelson's proffered material was actually an adjudication on the merits of the claims.

**24.**    For the record, while Joelson was serving his federal sentence he 1) experienced three riots and seen two killings first hand---between 1998 and 2012; 2) on January 2003 became a certified yoga teacher by the Yoga Alliance [E.R. 45]; 3) since Joelson was a registered yoga teacher he in 2003 partner and planned [and advanced $2,500.00 in U.S. Currency] with Guillermo Perez to open two yoga studios in Colombia if Joelson was successful in his post-trial relief requests before 2004; 4) during a span of 7 years Joelson

had life threatening situations which were serious and stressful with gangs pertaining to

Los Sureños [Mexican Mafia] and Latin Kings where they wanted to extort money from

him and/or bring into the institutions illegal drugs; 5) during the course of post-habeas

litigation Joelson spend [easy over five thousand dollars] on court fees, copies, stamps

[certified or registered mail], jailhouse-lawyers and, 6) on August 12, 2012, experienced

a severe heart attack with unfortunate consequences to his heart, that he must on an ongoing

basis be monitored every 10 months by cardiologist' at UCSD and take medication to treat

his condition.

25.    On April 28, 2014, the High Court disallowed Joelson from filing any civil request

for writ of certiorari without first paying the docketing fees [although Joelson had sworn

that he was impoverished]. [E.R. 136]. On November 14, 2014, Joelson terminated his

federal sentence [after completing 292 months]. On November 14, 2019, Joelson

terminated his 60-month term of supervisory release.

26.    During the five years of supervisory release, Joelson still litigated and sought relief

with the district courts and with the Ninth Circuit on those denials; in fact, on March 2016

Joelson filed a Rule 60(b)(4) to void the 2002 Rule 60(b) and habeas judgment due to the

defendants' misconduct with no determination or ruling as of this date, even though Joelson

has requested on four different occasions for a status hearing or to expedite a ruling on the

void judgment petition: Joelson believes the court was waiting for him to terminate the

term of supervisory released in order to deny the petition as moot, failing to consider that

Joelson still suffers and endures collateral consequences from his conviction. [E.R. 109-134].

27.     On July 1, 2016, Joelson mailed and e-mailed a safety-harbor letter to Asst. U.S. Attorney Ms. Palmer and to her "*Vicarious liability/Respondeat Supervisors*" [Ms. Eileen M. Decker, U.S. Attorney for the Central District of California and Mr. Lawrence S. Middleton, Chief Criminal Division] to advise that Joelson would seek for sanctions if she did not correct her pleadings with truthful procedural facts and law on her opposition pleading [E.R. 46-55]---unfortunately, Ms. Carley did not correct her opposition pleading and her supervisors failed in ordering her to correct the pleading. Joelson on July 26, 2016, filed a Rule 11 and 28 U.S.C. §1927 motion for sanctions---as of this date the reviewing court has not made a ruling on the Rule 60(b)(4) or on any of the ancillary motions under the Fifth Amendment to appoint counsel, motion to supplement the record under Habeas Rule 7, and motion for sanctions. E.R. 109-134.

28,     On May 2018 Joelson filed [8:18cv0777-AG-DFM] a new declaratory and injunction complaint: the district court and the Ninth Circuit summarily denied the action for lack of jurisdiction by the dismissing Joelson's request for IFP status. [E.R. 30-44].

29.     On September 12, 2018, Asst. U.S. Attorney Ms. Carley A. Palmer, threaten Joelson within her filing of a status motion, for the reviewing court with its inherent power to sanction Joelson for abusing the judicial process---in short, because Joelson has been a vexatious litigant.

///

**30.**     In the middle of March of 2019, Joelson found ***Protocol 745 on the Department of Justice*** website dated May 2002, and updated on 2005 and 2012 justifies a claim for "***vicarious*** liability," which brings to light the Department of Justice new policy/directive to act improperly [continuously from 2002] to influence or encourage the courts to refuse to entertain the petitions in their opposition pleadings upon post-trial relief requests by federal inmates:

> to "*preserve the limitations of the AEDPA and §2255, **encourage the district courts 'to refuse' to entertain such ? §2241** petitions...and '**discourage**' prisoners from filing such §2241 petitions...*" [E.R 56]..

**31.**     Joelson and Valdez on August 2019 filed the first 95 form with the Chief Counsel from the Office of Professional Responsibility of the Department of Justice, and subsequent amendments by certified mail on September [twice], October, and  November 2019, and Joelson and Valdez filed on October 2019 a form 95 by certified mail to the Office of the General Counsel from the Oversight and Accountability for the United States Court since the federal judges overseeing Joelson's post-trial processes have acted ultra-vires and have failed in their duty to care---this action has been filed within the six month time limit after the denial of the administrative requests by failing to make a ruling on the claims [E.R. 57-65] and the plaintiffs notified the USA of their intention for tort action. [66-69].

**32.** On August 29, 2019, Joelson filed with this district court a §2241 petition under the savings clause" since the § 2255 is "inadequate or ineffective to test the legality of his detention." And, On September 27, 2019, After the Ninth Circuit denied Joelson's request for writ of mandamus for the central district to [among other things] make a ruling on his Rule 60(b) since it has been pending on the docket for over 3 years, Joelson wrote a letter

- 14 -

to Chief Judge Sidney Thomas addressing the fact that not one federal has adjudicated Joelson's habeas or post habeas claims on the merits---unfortunately, the Chief Judge never answer or replied back regarding the substantial grievances. [E.R. 70-71].

**33.**    ***Plaintiff Valdez***: On October 1998 Valdez was arrested with other co-defendans with various offenses related to cocaine trafficking, for conspiracy to distribute, for possession and distribution, maintaining a place for distribution, and aiding and abetting to use the mail and for interstate travel. 21 U.S.C. §§846/ 841(b), 21 U.S.C. §856, and 18 U.S.C. §§2 and 1952.

**34.**    On June 9, 1999, Valdez was convicted of all counts. On September 29, 1999, the sentencing court imposed a sentence of 360 months and 5 years supervised release---on August 18, 2015, the court granted Valdez's motion to modify his sentence due to retroactive amendment to the U.S.S.G. to a sentence of 324 months. [Dkt. 601].

**35.**    On May 7, 2001, the Ninth Circuit affirmed the lower court's conviction and sentence on an unpublished opinion. ***United States v. Marin, 8 Fed. Appx. 815 (9th Cir. 2001)***---while the  appeal was pending the Supreme Court decided its landmark decision ***Apprendi v. New Jersey, 120 S. Ct. 2348  (June 2000)***; judicial notice: the *Apprendi* ruling *was 11 months before Valdez's direct appeal denial.* [E.R. 74-75] shows 1) appeal counsel advised Valdez of the *Apprendi* ruling and for him to file a §2255 on the claim;2) Valdez requested to file supplemental brief on the *Apprendi* claim since counsel refused to file the *Apprendi claim; 3)* although Appellate Commissioner ordered appeal counsel to respond *counsel instead* of briefing the *Apprendi* claim sought only permission to designate Valdez

- 15 -

as co-counsel; and, 4) Appellate Commissioner denied both the request to appoint Valdez

as co-counsel and for him to file a pro-se supplemental brief on the *Apprendi* claim.

**36.**    On July 25, 2002 Valdez filed pursuant to §2255 his habeas motion. Where among

other claims he argued that trial counsel was ineffective in violation of the Sixth

Amendment and that his affirmed sentence was unconstitutional under *Apprendi* due to

failings from the direct appeal counsel and the Ninth Circuit's procedural framework.

**37.**    On April 3, 2003, the lower court denied Valdez's habeas petition. The Ninth Circuit

on July 12, 2004, the Ninth Circuit affirmed the lower court's denial ruling---holding that

Valdez was barred from seeking relief based on *Apprendi* because that decision did not

apply retroactively on collateral review. On April 13, 2005, the Court of Appeals denied

Valdez's motion to recall the mandate on the direct appeal ruling.

**38.**    In the intervening years, Valdez has post-habeas litigated numerous relief request

with the District of Alaska pursuant to successive 2255's, Rule 60(b)'s and motions for

reconsideration on those denials---which were affirmed by the Ninth Circuit. [Dkt's 519,

550, 560, 584, 622].

**40.**    In addition, Valdez has attempted twice [equally unsuccessfully] in seeking relief

through a motion under Section §2241 via the "savings clause" of 28 U.S.C. 2255(e) with

the Eastern District of California [**SEE**: Case ***Valdez v. Apker***, No's *1:17 cv 01308*, and

***Valdez v. Friend***, *1:19cv00911*], and with the Ninth Circuit where they affirmed the rulings

of the lower court. [Court Appeal No's *17-17281* and *19-16644*]. On April 17, 2020, the

Office of Professional Responsibility determined that they would not seek an action to

- 16 -

Valdez's claim of misconduct. [ E.R. 137]. On July 22, 2020, the District of Alaska granted

Valdez's motion [due to the covid19] for compassionate release on August 4, 2020.

**JUDICIAL OFFICERS BREACHED THEIR DUTY TO CARE BY INJURING THE PLAINTIFFS' TO PROLONG DETENTION: WHERE THEY OPPRESSED THE JUDICIAL PROCESS; "*SUSPENDED*" THE HABEAS CORPUS AND INFRINGED UPON THE EQUAL PROTECTION CLAUSE**

**40.**    The preceding factual statements and allegations are incorporated by reference by

each and every prior and subsequent allegation as though fully set forth herein, and

supported by Joelson's and Valdez's direct appeal record, post-trial and post-habeas

civil/criminal docket record. [SEE: Valdez's declaration given Joelson power of attorney

upon the instant tort action—E.R. 135].

**41.**    United States ["defendant" or "government"] judicial court officers were acting in

the course and scope of their official capacities, that under the circumstances United States

of America is liable to the plaintiffs' in the same manner to the extent as a private individual

under the laws of California and Alaska.

**42.** Defendant's judicial court officers over the course of 20 years of post-trial and post-

habeas litigation proximately caused irreparable injuries to plaintiffs' due to their

***continued pattern*** of ultra-vires conduct in breaching their obligation and duties to follow

policies, statutory rules, ethical and canon principles, precedent law, professional code of

conduct, the ABA standards of conduct, and failing to provide an "***honest service***" [which

plaintiffs' were relying on]  by intentionally neglecting on their duty to care to plaintiffs'

rights  pursuant to the First,  Fourth, Fifth,  Sixth, and Eight  Amendments of the United

States Constitution , those under California's Constitution Article 1 [Declarations of

- 17 -

Rights] upon Section 3(a), 7, 11, 13, 17, and 26, and that under Alaska's Constitution Article 1 Section 1, 6, 7, 12, 13, and 14.

43.    Although United States judicial court officers owed a duty to care to the plaintiffs' and class-members under federal and state constitution, federal civil rules and statutory rights, those pursuant to regulations or policies, that of ethical and canon rules, and those outlined under the ABA standards and conduct of Professional Responsibility; they instead were deliberate indifferent to such duty by been *negligent "**in performing their non-discretionary task**:"* which caused the constitutional violations mentioned on ¶42.

44.    The defendant's judicial court officers on Valdez's tort [Asst. U.S. Attorney's Richard M. Pomeroy, E. Bryant Wilson, Steven E. Skrocki] and on Joelson's tort [Daniel Levin, Gonzalo P. Curiel, Tim Laske, Amanda Liskamm, and A. Carley Palmer as individuals/jointly or by aiding and  abetting] ***continued a pattern*** of negligence from their fraudulent conduct [fraud upon the courts] to interfere with the judges performance of their judicial duties and undermined the integrity of the judicial proceedings: thereby abusing the judicial process, by 1) oppressing and misrepresenting factual facts and law, 2) omitting and failing to disclose [on their opposition pleadings] essential facts and law to a third party [the federal judges presiding over the judicial reviews]---thereby proximately caused the federal judges to violate [among other violations] federal law, statutory and habeas rules 3) intrude on plaintiffs' their liberty interest,  and 4) causing oppression and prolong detention since they were deliberate indifferent to foreseeable injuries or harm the plaintiffs' would experience.

- 18 -

**45.** In the manner United States [District Judges on Valdez's reviews James K. Singleton, Timothy M. Burgess, Lawrence J. O'Neill and Magistrate judges Sheila K. Oberto, Jennifer L. Thurston and on Joelson's reviews Judge, David W. Williams, David O. Carter, Andrew J. Feess, Virginia A. Phillips, Andrew J. Guildford, Cormac J. Carney ] held their inadequate judicial processes it was illegal under the federal and state law since it violated the fundamental fairness principles and constitutes a "manifest disregard" upon their duty to care [to the plaintiffs'] by not upholding the rule of law: such lapse deprived the efficiency and fairness of the administration of justice as prescribed pursuant to both California's and Alaska's Code of Judicial Ethics, Rules of Professional Conduct, and Code of Conduct for United States Judges: Canon 1, 2, and 3.

## CAUSES OF ACTION

### [FED. TORT CLAIMS ACT]
### FIRST CAUSE OF ACTION
### United States Breached The Duty to Care (upon *Joelson*)

**46.** Plaintiff Joelson re-alleges and incorporates by reference each and every allegation contained   herein through ¶1-45:

**47.** Defendant's judicial court officers and their supervisors [U.S. Attorney and the Chief Criminal Division], the federal judges from the Central District of California, the federal Circuit Judges from the Ninth Circuit, Solicitor General, and the U.S. Attorney General from the Department of Justice in Washington, D.C. ["DOJ"], jointly or individually or by aiding and abetting continually breached their duty to care when they negligently violated Joelson's federal and state rights, civil rules, established law, those of ethical and canon

- 19 -

rules, and conduct under the American Bar Association [ABA] and Professional Rules of

Conduct---during his post-trial and all post-habeas litigations over the course of 22 years.

**48.** The United States judicial court officers acted [as Asst. U.S. Attorney's

individually/jointly or by aiding and abetting] within their scope of their employment when

they schemed to oppress the truth; obstructed justice with misrepresentations and

omissions; abuse the judicial process by failing to disclose [the proffered non-record

material E.R. 76-94] for the purpose of perpetrating an injustice which is not proper in the

regular conduct of a judicial process; and, intentionally executed fraud upon the courts.

**49.** The United States [as federal district judges] should have known [easily predictable]

that their illegal non-actions would pose on Joelson a prolong detention and collateral

conviction consequences due to the oppression of the judicial process: such as,

consequences for [among others] emotional distress due to life threatening situations from

gang members and the results of incarceration itself [among others] send to the SHU

without just cause on several occasions---charges later drop. And, Joelson in 2012 suffered

a heart attack while incarcerated due to stress, his age, and the unhealthy process food

provided by the federal prisons over the course of 22 years of incarceration at the time---

with the unfortunate serious effects of persistent irregular heart-beats as of this date that,

must be monitored and evaluated every 10 months in order to observe if any further or

additional damages to the heart has occurred; fortunately due to the continuing monitoring

Joelson in 2017 and 2019 had to go through two heart procedures [without success] in

order to be prescribed new medicine to alleviate his persistent condition.

**50.**    As a direct and proximate result of the defendant's judicial court officers aforementioned ultra vires conduct to oppress, obstruct justice, and other tortious acts, Joelson suffered not only a prolong detention but in fact continues to endure severe collateral conviction consequences:

**a.** The defendant's [Asst. U.S. Attorney's] devised a pattern of ***fraud upon the courts*** by omitting, concealing, and failing to disclose [2/] the fact that Joelson had proffered non-record material [two personal declarations outlining events that occurred prior to his arrest and discussions with his trial counsel during the trial court's authorized 5 minute recess E.R. 81-90 and 76-80] that was outside the record and key portions of the resentencing

[2/]    USA court officers [Levin, *Curiel, Laske, Liskamm, Carley, and* Katya] were/area dishonest conduct that constitutes fraud upon the court, where their omission and concealment is fraudulent since they were the party that had a *duty to disclose* as to the actual facts and law to the reviewing courts. In addition, due to their misconduct to deceit on their pleadings they violated subsection (b) of Rule 11 of the Fed. R. Civ. P., where the party presenting a pleading is certifying that to the best of the person's knowledge, the information, *formed after inquiry* reasonable under the circumstances, and (1) not presented for any improper purpose; (2) that the defenses and other legal contentions therein warranted by existing law; and, (3) the allegations and other factual contentions have evidentiary support. Here, fraud exist because the false representation was made to a third party [the federal courts] that relied upon by the misstatements during the reviewing courts fact-finding process from the defendants' resulting an injury to Joelson. In the end, "*no fraud is more odious than an attempt to subvert the administration of justice*" [***Hazel-Atlas Co. v. Hartford Co., 64 S. Ct. 997 (1944);*** in California attorney conduct is ***not*** protected from prosecution by litigation privilege: "Every attorney is guilty of a misdemeanor who is '***guilty of deceit…, with the intent to deceive the court***.'" Business and Professions Code Section 6128; also 6106, 6068, 6067, and Ca. Civ. Code. 3333, 1708-1714; and,   it is the duty of an attorney in California "***never to seek to mislead the judge…by…false statement or law***" [Business and Professions Code 6068]; and, under Rule 8.4 from the ABA,  it is ***misconduct to c) to engage in conduct involving dishonesty, fraud, deceit. or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice***; (e) imply an ability to influence improperly…to achieve results by means that violate the Rules of Professional Conduct or law; (f) knowingly solicit or induce a judge …in conduct that is in violation of an applicable code of judicial ethics or code of judicial conduct or other law.

transcript [E.R. 91-94] that supported the habeas claims under ineffective assistance of counsel, conflict of interest, lack of communication, and that Joelson was forced to choose between two constitutional rights. [copy of §2255 motion---E.R. 95-108].

**b.** Defendant [Daniel Levin] contrived a scheme to deceive the habeas court that the claims were barred by the re-litigation rule because the direct appeal claims had been reviewed and determined by the Ninth Circuit [omitting and failing to disclose the fact that Joelson had in fact proffered non-record material in support of his underlying claims as instructed by the direct appeal panel]; Defendant [Gonzalo P. Curiel] aided and abetted Levin's ultra-vires action by continuing to oppress and mislead the 2002 Rule 60(b) court [Judge David O. Carter] that AEDPA's strict provisions on second §2255's prohibited any judicial review since the claims had been adjudicated on the merits by both the direct appeal panel and the habeas court.

**c.** Due to defendant's judicial court officers [Levin/Curiel and federal judge's David W. Williams [deceased] and David O. Carter's individual/collective or in aiding and abetting] ultra-vires actions, the habeas and the 2002 Rule 60(b) specific claims were not adjudicated on the merits since both the habeas and Rule 60(b) court's ignored and disregarded from their fact-finding processes the proffered material and key portions of the resentencing transcript submitted in support of the underlying claims; as a consequence, the corrosive actions by the defendants' judicial court officers prevented 1) Joelson with any opportunity to develop a record on trial counsel's incompetence [which is contrary to the directive from the direct appeal court] and, 2) foreclosed Joelson's right to prosecute

his direct appeal claim at an "initial-review" proceeding or during subsequent post-habeas proceedings.   **[SEE:** copy of 2016 Rule 60(b) motion---E.R. 109-134].

**51.**     Although defendant's court officers [*Levin, Curiel, Tim Laske, Amanda Liskamm, Palmer* [Asst. U.S. Attorney's] and *Neal K. Katyal* (Acting Solicitor General) ] had a duty to disclose they instead engaged in illegal conduct towards Joelson that adversely involved oppression upon the fairness and equitable principles [by omitting, concealing, misleading, misrepresenting, and failing to disclose actual facts on their opposition pleadings] during the post-trial and post-habeas judicial reviews over the last 22 years of litigation, the defendants' improper conduct was not only prejudicial and  harmful to Joelson's rights, it also disturbed the  administration of justice and  the public interest---where the omissions and  deceit come at a very steep price;  because, that  kind of conduct does not inspire confidence in the rule of law and ethics. It corrodes public trust in the judicial institution.

**52.**     When defendant's [post-habeas Asst. U.S. Attorney's *Tim Laske, Amanda Liskamm, A. Carley Palmer, and Neal Katyal (acting Solicitor General)* as individuals/jointly or by aiding  and abetting], ventured not to disclose the actual facts and law but instead sought to oppress, omit, conceal, mislead, and misrepresent that Joelson had proffered the non-record material in their respective pleadings [*fraud upon the courts*]  during the judicial reviews with the district court, ninth Circuit, and on certiorari request on Joelson's 2009 declaratory/injunction complaint, the 2011 request for writ audita querela, and the 2016 Rule 60(b)(4) was an *obstruction of justice*  and *abuse of the judicial process* that harmed and injured Joelson's to a prolong detention;  his liberty interest, due process, access to the

- 23 -

court's, the right to petition the government for redress of grievances, and preventing Joelson from invoking the privilege to the writ of habeas corpus and equal protection clause.

**53**. Due to the defendant's ultra-vires actions Joelson's writ of habeas corpus has been illegally "suspended" to prosecute the direct appeal claim on post-habeas process even though the direct appeal court ordered Joelson to file a §2255 *in order to develop a record* on trial counsel's incompetence---thereby obstructing and interfering on Joelson's right to seek redress of grievances that the government committed fraud upon the court and that the habeas court held and facilitated an inadequate and defective fact-finding process by ignoring non-record material: the opposition to the Rule 60(b) clearly shows the omission by Curiel as to the actual facts, "…did not provide any new evidence to support his claims."

**54.** The defendant's [judges Williams, Carter, Guilford, and Carney] by accepting the Asst. U.S. Attorney's opposition statements as truth of the matters and determining that the court record was complete the principles of justice and fairness were compromised, resulting in the reviewing courts to ***ignored and disregard*** *from their fact-finding processes 1) the direct appeal panel's directive for Joelson to file a §2255 in order to complete the record on counsels incompetence; 2)* the proffered non-record material [two declarations] and key portions of the resentencing transcript; 3) Ms Pagaoga's declaration to support a downward reduction due to mitigating circumstances under USSG 5K2.12 for incomplete duress; and, 4) due to the reviewing court's improper interference it entails exposure of hardship upon Joelson current and future posture and status.

**55.**   The defendant's [district judges] by accepting the Asst. U.S. Attorney's opposition statements as truth of the matters as to facts and law resulted in the reviewing courts to hold inadequate and defective   fact-finding processes because they [relied upon the government's misrepresentations] ignored the proffered non-record material [two declarations], key portions of the resentencing transcript, and Ms Pagaoga's declaration in support of the sentencing and conviction issues from their fact findings. [E.R. 76-94].

**56.**   United States [federal judges] by accepting and relying upon the Asst. U.S. Attorney's constant misleading pleadings statements as truth of the facts and law, the federal courts were induced to a reliance of those  statements as truthful, which caused in holding illegally inadequate procedural bars and defective fact-finding processes to the detriment of 1) Joelson's constitutional rights from both the United States and that of the State of California; 2) the administration of justice; 3) public interest; 4) to a prolong detention and oppression of the "initial-review" direct appeal process; and, 5) collateral conviction consequences. [3/]

**57.**   Moreover, the United States [federal judges] were in effect ***complicit*** upon the government's ongoing violations:  where the Asst. U.S. Attorney's conceal, distorted, disregarded federal law, policy and regulations, and in failing on the duty to care to [*inter-*

[3/] Although Joelson terminated his term of supervise release, he still endures collateral consequences from his conviction: such as, 1) registering under California's Narcotic law §11590 H&S due to his drug felony [which also falls under as a sexual predator] till November 2024: 2) even though Joelson is a certify yoga teacher since 2002, is unable to teach yoga [or make a living] to juveniles in probation or drug problems or aged persons with health issues due his felony conviction; and, 3) due to his legal status a) he must reapply every 5 years with immigration; 2) is  unable to apply for U.S. citizenship, and 3) unable to partake in the judicial system with either the state or federal juries.

- 25 -

*alia*] protect Joelson's liberty interest was prejudicial since it illegally prolonged Joelson's detention; which had fundamental collateral consequences to the ***suspension*** of the writ of habeas corpus, oppression upon the equal protection of the laws, the right to petition the government for redress of grievances, and interfering upon Joelson's right to prosecute his direct appeal claim at an "initial-review" habeas proceeding [that was diverted due to the Ninth Circuit's procedural framework to a §2255 proceeding in order to develop a record on counsel's incompetence]---such actions to aid and abet the government's ultra vires actions constitutes a "manifest disregard of the law."

**58**.     Joelson is further injured by defendants' ultra-vires actions [4/] because his conviction has not been finalized since the claim of ineffective assistance of counsel was not been exhausted either with the direct appeal court [due to the Ninth Circuit's framework] or at a direct appeal "initial-review" habeas proceeding [as directed by the direct appeal panel]--- fundamentally, because the post-trial and post-habeas processes were 1) inadequately procedurally barred; and, 2) the specific claims were not adjudicated on the merits

[4/]     Although this a civil tort and criminal statutes are not allowed for suit, their factors and elements should be considered under advisement: such as, California *Penal Code §134* states in part; "a person is guilty of a felony if 1) prepares a false matter, 2) with intent to produce it. As true upon…[a] proceeding…authorized by law, 3) for any fraudulent or deceitful purpose;" *18 U.S.C. §1503* states in part: "…endeavors to influence, obstruct, or impede, the administration, and 18 U.S.C. §242 prescribes penalties for deprivation of right under color of law. In addition, such ultra-vires conduct is in violation of 28 C.F.R. §77.1 ("The Department of Justice is committed to ensuring that its attorneys perform their duties in accordance with the highest ethical standards" as imposed on 28 U.S.C. §530B); 5 C.F.R. 735.203 (restrictions on conduct by government employee); 5 C.F.R. 2635.101: (obligation of public service); Section 530B: "An attorney for the government shall be subject to State laws and rules…" [See: n. 12]; Executive Order 12731 "Principles of Ethical Conduct for Government Officers and Employees:" Section 101 employees shall, (e) put forth honest effort, (h) act impartially, and, (m) endeavor to avoid any actions creating the appearance that they are violating the law…"

- 26 -

because [the facts were distorted by the Asst. U.S. Attorney's]   the reviewing courts reliance on the government's misrepresentations ignored the proffered material in support during their inadequate fact-finding processes.

**59.**    Joelson is further injured by United States judicial court officers ultra-vires actions because his conviction has not been finalized since the claim of ineffective assistance of counsel was not been exhausted either with the direct appeal court [due to the Ninth Circuit's framework] or at a direct appeal "initial-review" habeas proceeding [as directed by the direct appeal panel]---fundamentally, because the post-trial and post-habeas processes were 1) inadequately procedurally barred; and, 2) the specific claims were not adjudicated on the merits [because the facts were distorted] since the reviewing courts ignored and disregarded the proffered material in support during their inadequate fact-finding processes.

**60.**    Defendant's judicial court officers [both the Asst. U.S. Attorney's and the federal judges as individually/collectively or by aiding and abetting and Does 1-50] acted with wrongful actions, or inaction, and omissions upon Joelson by violating all fundamental concepts of honesty, fairness, ethical or canon rules, and federal and state law, all aimed at prolonging his detention and depriving Joelson in prosecuting his direct appeal claim, his liberty interest  by oppressing, distorting, corrupting, and abusing the processes of the administration of law [excessively delaying an adjudication of the direct appeal claim at an "initial-review" proceeding:  this was accomplished with ***deliberate indifference***   to impede, hinder,  obstruct, defeat the due course  of  process so that justice would not be

- 27 -

administered and, with the intention to deny Joelson the equal protection of the laws in order that his sentence would be considerably prolonged by at least 16 years.

## SECOND CAUSE OF ACTION
### United States Breached Its Own Duty to Care
### And Aided and Abetted The Breach of Fiduciary Duty

**61.** Plaintiff Joelson re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 60 of this complaint.

**62.** The defendant's [Asst. U.S. Attorney's] from the Central District of California and their supervisors [U.S. Attorney and Chief, Criminal Division], and Neal K. Katyal [Acting Solicitor General], the federal judges from the Central District of California, the federal Circuit Judges from the Ninth Circuit, Solicitor and [Does 1-50] U.S. Attorney General from the Department of Justice in Washington, D.C. ["DOJ"], acting within their scope of employment, jointly/individually or by aiding and abetting repeatedly breached their duty to care by negligently acting with indifference in violating continually federal and state rights, civil rules, precedent law, those of ethical and canon rules, and conduct under the American Bar Association [ABA] and Professional Rules of Conduct---over the course of 22 years of post-trial and all post-habeas litigations.

**63.** The United States [and Does 1-50] negligently breached their own duty to care: such as, in 1) forsaking their solemn oath of the Constitution; 2) not abiding or disregarding established mandatory law; 3) holding unfair judicial review processes and abusing the judicial process; and 4) callously disregarding to discharge their responsibilities as outlined under policy and regulations, ethical, Canons, and Professional Responsibility Rules over

- 28 -

the last 22 years of litigation---such illegal conduct is also owed in part due to the execution

by the DOJ's policy outlined pursuant to Protocol 745 in 2002: to *"encourage" the district*

*courts to "refuse" to entertain post-habeas-petitions, and to "discourage" prisoners from*

*filing post-habeas-petitions.*

### DEFENDANTS' OFT-REPEATED ACTIONS PROLONGED JOELSON 'S DETENTION DUE TO THEIR OPPRESSION; AND VIOLATING THE UNITED STATES AND CALIFORNIA'S CONSTITTION

### THIRD CAUSE OF ACTION
### Prolong Detention

**64.**     Plaintiff Joelson re-alleges and incorporates by reference each and every allegation

contained in paragraphs 1 through 63 of this complaint.

**65.**     Defendant's judicial court officers acted in a continuous manner with a deliberate

indifference and reckless disregard of their obligations and to the rights owed to Joelson

during the habeas proceedings and all other post-habeas processes Joelson sought relief

with: thereby proximately *causing a delay / interference* upon Joelson's protected liberty

interest under due process of law, and in prolonging and oppressing his detention in

violation of the Fourth and Eight Amendments---prolonging detention without just cause

in violation of California's Constitution under Section 7, 13, and 17.

**66.**   Defendant's acted in a continuous manner with a deliberate indifference and reckless

disregard of their obligations and to the rights owed to Joelson during the habeas

proceedings and all other post-habeas processes Joelson sought relief with:   thereby

proximately *causing a delay / interference* upon Joelson's protected liberty interest under

due process of law, and in prolonging and oppressing his detention in violation of the

Fourth and Eight Amendments---prolonging detention without just cause in violation of California's Constitution under Section 7, 13, and 17.

**67.** Joelson avers that the court officers as individuals or in concert deliberately participated in breaching their duty to care owed to him so as to oppress and deprive Joelson of his liberty interest without just cause is a violation of California's Constitution under Section 3(a), 7, 11, 13, and 17.

**68.** Joelson was harmed by the United States judicial court officers [Levin, Curiel, Liskamm, Palmer, Williams, Carter, Feess, Guilford, Carney, Katyal] either individually or in concert deliberately participated in breaching their duty to care owed to him or by failing to disclose by oppressing and depriving Joelson of his liberty interest and intentionally detaining and prolonging wrongfully his incarceration without just cause--- the record establishes that the post-trial and post-habeas fact-finding processes were held in a manner that was illusionary as being fair and equitable.

**69.** Plaintiffs aver that the United States is liable to him for a prolong detention and from collateral conviction consequences. due to their ultra-vires actions or inactions to protect Joelson.

**70.** As a direct and proximate result of oppression and the false imprisonment/prolong detention by The USA court officers mentioned on ¶¶54-68 and 79, demonstrates Joelson substantially tolerated during the post-trial and post-habeas processes [among others proceedings] serious judicial injuries of oppression, unfairness, abuse of process, constitutional violations, violations to both the "Suspension" and "Equal Protection"

Clause of the Constitution, emotional distress, and loss of family companionship/consortium. [5/]

## FOURTH CAUSE OF ACTION
### Reckless Negligence

**71.**    Plaintiff Joelson re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 70 of this complaint.

**72.**    In committing the aforementioned acts and/or omissions Defendant's judicial court officers [mentioned on ¶¶54-68 and ¶79] reckless negligence breached their duty to use due care, which directly and proximately resulted in the injuries and damages Joelson has as alleged herein---where, [*inter alia*] Joelson was impeded in prosecuting his direct appeal claim [in a meaningful manner] at an "initial-review" proceeding that in the end delayed excessively an appellate review on the direct appeal claim that was diverted to a §2255 proceeding;  as a consequence infringed upon Joelson's freedom and prolonging his detention by failing to provide adequate procedural protections upon the privilege of the writ of habeas corpus and that of the equal protection clause which were suspended illegally.

**73.**    United States [supervisors from the Justice Department at the Central District of California or at the headquarters from the DOJ in Washington D.C] negligently failed to

---

[5/] The inactions by the government attorney's in not disclosing the actual facts and law to the reviewing courts, and their ill-action to oppress, distort and conceal from the federal courts view that Joelson had in fact proffered material to support his underlying claims during their fact-finding processes, was an abuse of the judicial process: because it fundamentally prolonged and oppress the litigation for over 22 years [this essentially "suspended" the writ of habeas corpus] and the defendants' illegal conduct denied the administration of justice and has cause an "excessive delay" on the direct appeal process---the "abuse of the Court's process" will persist unless damages are awarded and protective measures are taken.

Supervised Asst. U.S. Attorney's [Levin, Curiel, Laske, Liskamm, Carley [6/]] when they were representing the United States during Joelson's post-trial and post-habeas judicial processes by [among others] failing to correct or outline proper procedures of duty to care, principles of equity and fairness, that of ethics, professional conduct, and the rule of law.

## FIFTH CAUSE OF ACTION
### Defendant Created a Foreseeable Peril

74.    Plaintiff Joelson re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 73 of this complaint.

75.    The United States judicial court officers [for the reasons stated on ¶¶40-73 and ¶79] should have "*foreseen*" that their tortuous conduct [among others] of *fraud upon the court* would lead to interferences and endless delays: upon 1) Joelson's liberty interest; 2) obtaining a fair and impartial judicial review process[es]---because the claims were not resolve fully and on the merits since the proffered non-record material were ignored during the inadequate fact-finding processes; 3) the right to prosecute his direct appeal claim at an "initial-review" proceeding; 4) excessively delaying an appellate review on the direct appeal claim that was diverted to a §2255 proceeding; 5) Joelson been released much earlier from incarceration---thereby prolonging his detention; 6) encroaching upon the writ of

---

[6/]  The United States judicial court officers owed Joelson a continuing ministerial duty that was non-discretionary function to uphold: since their ill actions or inactions "are [not] the kind that the discretionary function exception was designed to shield" [*United States v. Gaubert, 111 S. Ct. 1267(1991)*]: the defendant's failure to discharge their mandatory duty was a negligent conduct that entails [violation of California Government Code under §§815.2 and 815.6] an unreasonable behavior that breaches the duty of care.

- 32 -

habeas corpus and that of the equal protection clauses; 7) causing severe infliction of emotional distress over the course of 22 years of litigation; and, 8) loss of family companionship/consortium.

(a)  In addition, although the United States  court officers [mentioned on ¶¶66-68, ¶79 as Does 1-50] as individuals or acting in concert  repeatedly in an ultra-vires manner through-out the 22 years of post-trial and post-habeas litigation Joelson   naively trusted, relied and depended on that judicial court officers would act lawfully, ethically, and professionally during all his the post-trial and post habeas judicial review processes---inasmuch, because there is a *special relationship* with defendant's owing a duty to care that caused a false sense of security [expecting an *honest service*] in assuming Joelson would  obtain an unobstructed meaningful reviews that would be fair and equitable proceedings.

**76.**    The United States [Asst. U.S. Attorney's and Does 1-50] continuing conduct of "*bad faith*" also comes from engaging either on the ***DOJ's practice and custom*** [pursuant to Protocol 745] to "***influence"*** the post-trial or post-habeas reviewing courts ***to refuse to entertain a federal prisoners petitions*** and/or either the [supervisors at the U.S. Attorney's Office from the Central District of California or at the DOJ in Washington, D.C.] individually or jointly failed to act to correct the Asst. U.S. Attorney's ill conduct---and, all the government attorney's  acted with "*deliberate indifference*" upon their obligations prescribed under the constitution, statute, habeas and Fed. Civ. P. rules, canons and ethical principles, in order to deny and infringe upon Joelson's federal and state rights.

**77.**    The United States court officers [mentioned on ¶¶54-68, and ¶79 as Does 1-50] knowingly placed Joelson in a detrimental and "unusual" procedural posture [by foreclosing federal forums available to him] when they were deliberate indifferent to the foreseeable impediments and infringements they would substantially cause upon Joelson's federal and state rights, and to his collateral conviction consequences.

**78.**    Joelson inevitably is injured and harmed by the United States judicial court officers [mentioned on ¶¶54-68, and ¶79 and Does 1-50] ultra-vires acts of oppression, fraud, deceit, misrepresentation, interference, obstruction, abuse of process, prolong detention, federal and state violations of the Constitution were wrongdoings that defendant certainly should have foreseen that there would be no end in sight for him to find a relief and that the defendant's distasteful actions would have continuing collateral consequences that are currently on going.

**79.**    Defendant's [judicial court officers district court judges Williams, Carter, Fees, Guilford, and Carney] failure to take reasonable steps to secure and facilitate fair judicial processes against foreseeable acts toward Joelson occurred due to the absence of any precautionary measures to protect him and/or to stop the defendants' [Levin, Curiel, Laske, Liskamm, Palmer] from their ultra-vires conduct.

### SIXTH CAUSE OF ACTION
### Oppression/Malice

**80.**    Plaintiff Joelson re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 79 of this complaint.

- 34 -

**81.**    The United States despicable conduct [among others rights] of oppression upon his liberty rights prolong Joelson's incarceration and    subjected him to cruel and unjust hardship of imprisonment by the defendant's conscious disregard and indifference upon Joelson's rights during the post-trial and post habeas judicial review processes.

**82.**    United States wrongful actions of malice during the post-trial and post-habeas judicial processes was not only to harass, vex or annoy Joelson's protected rights but to subject him to re-litigate his substantial case without end. [on last count 23 years]. Thus, the United States used their power arbitrarily by employing the instrument of oppression in order to interfere [among others] with rights *implicit in the concept of ordered liberty.*

**83.**    Defendant's judicial court officers [and Does 1-50] used oppressive litigation practices to the detriment of Joelson's state and federal Constitution rights, those under statutory and civil rules, and precedent law---because the USA used its power for purposes of oppression.

**84.**    USA refused to take precautions to protect Joelson from injury when they knew or should have recognized that the risk of harm was actual and foreseeable considering that the defendants' engaged in ultra-vires conduct that *"shocks the conscience"* because the defendants' were required to provide constitutional protections to Joelson. not to oppress those rights.

### SEVENTH CAUSEOF ACTION
### Negligent Supervision

**85.**    Plaintiff Joelson re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 84 of this complaint.

**86.**      In the middle of March of 2019, Joelson  found ***Protocol 745 from the Department of Justice web-site*** dated May 2002, and respectively updated on 2005 and 2012 justifying an action against the USA  for "*vicarious* liability," since it brings to light the Department of Justice policy/directive to continuously act [since 2002] in an improper manner to influence/encourage the federal courts to ***refuse*** to entertain the petitions in their opposition pleadings and to ***discourage*** federal inmates from filing during post-trial relief requests:

> in order to "*preserve the limitations of the AEDPA and §2255, **encourage the district courts 'to refuse' to entertain such ? §2241** petitions for want of jurisdiction, rather than stray into issues they lack jurisdiction to decide, and '**discourage**' prisoners from filing such §2241 petitions…*"

**87.**   In addition, on July 1, 2016, Joelson advised Asst. U.S. Attorney A. Carley Palmer's *Respondeat Supervisors* [[Ms. Eileen M. Decker, U.S. Attorney for the Central District of California and Mr. Lawrence S. Middleton, Chief Criminal Division] that he would be filing a sanction motion pursuant to Rule 11 of the Fed. R. Civ. P. and/or 28 U.S.C. §1927, if she did not correct [after been mailed a safety-harbor letter] her opposition pleading with actual truthful facts and law---since she [among other ultra-vires actions] misrepresented and omitted material facts and law to the reviewing court, and obstructed Joelson's protected right to full access to the courts.

**88.**   The above mentioned *Respondeat/Supervisiors* are liable because they were entirely aware and "knowingly refused to terminate a series of acts by Ms. Palmer, which [the supervisors and the DOJ's protocol 745 implemented by the agency in Washington, D.C.] knew or reasonably should  have known would cause [Joelson] an  infliction of constitutional injury," ***Dubner v. City & Cntyof San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001):** "*A supervisor can be liable in his individual capacity for his own culpable*

- 36 -

*action or inaction in the training, supervision, or control of his subordinates; for his*

*acquiescence in the constitutional deprivation; or for conduct that showed a reckless or*

*callous indifference to the rights of others."* **Watkins v. City of Oakland, 145 F.3d 1087,**

**1093 (9th Cir. 1998).**

### EIGHTH CAUSE OF ACTION
### Failure to implement Appropriate Policies
### and Lack of Duty to Care

89. Plaintiff Joelson re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 88 of this complaint.

90. That as a result of the inappropriate policies implemented, the absence of supervision, and the lack of duty to care by the defendant, the wrongful and negligent acts, by each of court officer [as Does 1-50] or jointly, caused Joelson to suffer the loss of consortium, family relationship with his two sons, loss of society, affection with the extended family, assistance, and conjugal fellowship, also caused [SEE: ¶108] intentional infliction of emotional distress.

### NINTH CAUSE OF ACTION
### Reckless Indifference to Joelson's Clearly
### Established Constitutional Rights

91. Plaintiff Joelson re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 90 of this complaint.

92. The acts by defendant's judicial court officers [Asst. U.S. Attorney's] fundamentally misrepresented/omitted and failed to disclose in their [communication] opposition pleadings to the reviewing federal judges, and the communication between the federal

- 37 -

judges and Joelson [in their findings and rulings]  were knowingly false and full of omissions which were made with the intent to specifically harm and injure Joelson upon his protected federal rights---[among others] to prolong his detention when they oppress the judicial process---by interfering with Joelson's right to prosecute the direct appeal claim at an "initial-review process and encroaching upon the Clauses to the privilege of the great writ and that of the Equal Protection of the Laws.

93.   The United States court officers official and unofficial ultra-vires conduct, policies and customs [in part to **Protocol 745**] encouraged, caused, allowed, or enabled them to disregard the law and violate Joelson's constitutional and state rights without fear of discipline or sanctions from their illegal conduct.

94.   Due to defendant's judicial court officers ultra-vires actions as individual or working in concert  during the post-trial and post-habeas judicial review processes engaged in an manner that was unfair and inequitable under state and federal Constitutions which guarantees non-interference from both the prosecution or the judges with Joelson's exercise right to present his non-record material and that of the resentencing transcript as evidence in support of his underlying claims---such substantial misconduct by the defendants' was entirely unnecessary to the proper performance of their duties.

## TENTH CAUSE OF ACTION
### Misconduct by the Defendant Permeated All the
### Post-trial and Post-habeas Judicial Review Processes

95.   Plaintiff Joelson re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 94 of this complaint.

- 38 -

**96.** The post-trial and post-habeas record clearly reveals the defendant's ultra-vires actions or inaction [as individuals/in concert, or by aiding and abetting] spread wildly without concern upon Joelson's protected rights or to his collateral consequences:

    **a.** Although USA court officers were required to abide and follow the law [during the post-trial and post-habeas judicial reviews] they opted instead to interfere and oppress with Joelson's state and federal constitutional protected rights, those of statutory, habeas, and civil rules, and precedent law, in order to infringe upon his appellate rights to prosecute his direct appeal claim at an "initial-review" process---which we must add, was a directive of the direct appeal panel for Joelson to do in order to develop a record on trial counsel's incompetence. ***Joelson, 7 F.3d at 174.*** {E.R. 4].

    **b.** Clearly the United States court officers [as Does 1-50] breached their *duty to disclose* that Joelson's direct appeal claim of ineffective assistance of counsel [as well as his other habeas claims of lack of communication, conflict of interest, and that Joelson was forced to choose between two constitutional rights] were not determined or ruled upon by the direct appeal panel---the ineffective assistance of counsel claim was not reviewed because the court record was insufficient for the direct appeal panel to make an adjudication on the merits.

    **c.** In addition, the defendant by failing to note ¶96a & b they breached their *duty to disclose* that Joelson relied upon the proffered non-record material and key portions of the resentencing transcript he submitted in support of his underlying claims; and, that Joelson's claims were addressed for the first time on a post-trial setting [since the direct appeal panel

did not review the ineffective assistance of counsel claim] the res judicata or relitigation rule did not apply to Joelson's habeas claims or upon those subsequent post-habeas requests---since AEDPA's strict provisions for successive §2255's [under 28 U.S.C. §§ 2244 and 2253's] were inapplicable due to Joelson's "unusual" post-trial and post-habeas posture.

**d.** United States judicial court officers not only owed a duty of care to Joelson who was foreseeably endangered by their misconduct---with respect to risks which made their conduct unreasonably dangerous to his protected rights during all his post-trial and post-habeas processes---but defendant also breached its duty to disclose to each other [due to the special relationship that stands between the Asst. U.S. Attorney's and the federal judges] the illegal conduct of the other caused upon Joelson's protected right. [7/]

### ELEVENTH CAUSE OF ACTION
### *VALDEZ'S* FTCA TORT ON DEFENDANT'S RECKLESS NEGLIGENCE, OPPRESSION, DELIBERATE INDIFFERENCE IN THEIR DUTY TO CARE AND DUTY TO DISCLOSE

[7/] *Ethical Duties*: Defendants' Asst. U.S. Attorney's [from Alaska' U.S. Attorney's Office] violated DR 1-102(A)(4) (fraudulent conduct); DR 1-102(A)(5) (conduct prejudicial to the administration of justice); and DR 7-102(A) (knowingly making a false statement of law or fact while representing the United States). Each of these violations constituted breaches by defendant of ethical duties. *See* ABA Model Standards, Lawyer Sanctions § 4.6 (Duties Owed to Clients; Lack of Candor); § 5.1 (Duties Owed to Public, Failure to Maintain Personal Integrity); § 6.1 (Duties Owed to the Legal System; False Statements, Fraud and Misrepresentation); § 6.2 (Duties Owed to the Legal System; Abuse of Legal Process). *See also* ABA Model Code of Professional Responsibility EC 1-5 (1980) ("Because of his position in society, even minor violations of law by a lawyer may tend to lessen public confidence in the legal profession. Obedience to law exemplifies respect for law. ***Disciplinary Matter Involving West, 805 P2d. 351 [Alaska S. Ct. (1991)]***.

**97.**     Plaintiff Valdez re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 96 of this complaint---since the misconduct from Valdez's defendants' judicial court officers are the same as to those given rise to by Joelson's defendants' and since the Constitution from both the State of Alaska and California, statutory and civil rules, ethical, professional code of conduct, and ABA standards   and those under Code of Conduct by U.S. Judges are similar in nature for purposes of this action.

**98.**     Due to defendants' court officers [as Does 1-50] ultra-vires negligent conduct of oppression ---by upholding and conducting an unfair and inequitable judicial review process[es]---was caused to no end with omissions, concealments, misrepresentations, deceit, and fraud upon the courts [by the Asst. U.S. Attorney's [Richard L. Pomeroy, E. Bryant Wilson, Steven E. Skrocki] in their pleadings upon the federal judges [Holland and Burgess]  where they completely and inadequately relied on the government's misleading facts and law onto their findings and rulings; thereby, depriving Valdez of post-trial and post-habeas equitable relief upon his liberty interest---prolonging his detention illegally and unjustly.

**99.**     Defendant's judicial court officers [as Does 1-50] deceptive practices of abuse of process and denying full access to the courts was realized by concealing, failing to disclose and the Asst. U.S. Attorney's  pleadings lacking candor, the judicial review courts held inadequate fact-finding process[es] since they ignored non-record material in support: thus,

prejudicing Valdez because his specific claims were not adjudicated on the merits and the claims were unresolved disputes that raised genuine issues of material facts. [8/]

**100.**    The USA systemic abuse of prosecutorial discretion in knowingly disregarding their obligations upon duty to care to protect Valdez's state and federal rights and to compel disclosure of the actual facts and law to post-trial and post-habeas courts    was also an abuse of process and oppression to full access to the court's, to the great writ of habeas corpus, and to equal protection of the laws---due to such interference by the defendants' Valdez was harmed to a prolonged detention.

[8/]    Fundamentally, it must be noted, that ***Apprendi*** was decided on June 2000 by the Supreme Court and Valdez's direct appeal was not ruled upon until May 2001---11 months after the ***Apprendi*** ruling. Thus, the direct appeal and non-record material record reveals that while Valdez's review was in process the High Court ruled on ***Apprendi*** . [Exh. #    ]. The record also reveals three important facts that were detrimental to Valdez [through no fault in his part]: 1) Appellate counsel on September 19, 2000, [ see Exh. #    ] wrote a letter to Valdez establishing that he was well aware of the ***Apprendi*** decision through the Ninth Circuit's ruling on U.S. v.Nordby, 225 F.3d 1053 (9th Cir. 2000); 2) although appellate counsel [erroneously] advised Valdez to file the ***Apprendi*** issue on a §2255 motion, the letter demonstrates that he lacked knowledge as to the proper procedural framework to apply the ***Apprendi*** claim on direct appeal---when he failed to note that the Ninth Circuit granted ***Nordby*** relief because "***Nordby's case comes to us on direct review, so there can be no question that he is entitled to the benefit of Apprendi's new rule."*** [Id. At 1059]; and, 3) When appellate counsel failed to supplement the opening brief with the Apprendi rule, Valdez sought permission to file a supplemental brief addressing the ***Apprendi*** ruling. Unfortunately, the Appellate commissioner declined the request since Valdez was represented by counsel [appeal Dkt. 17 and 18]. After Valdez responded to the commissioner's denial order appellate counsel filed a motion to appoint Valdez as co-counsel to file a supplemental brief on his behalf. [Dkt. 20 and 21]. Appellate commissioner on December 11, 2000, denied appeal counsel's motion to designate Valdez as co-counsel in the request to supplement the opening brief. [Dkt. 24]. It is clear, that defendants over the course of 16 years of litigation have acted with deliberate indifference to intentionally misconstrued Valdez's specific claims or in ignoring the proffered non-record material he submitted in support by simply arguing that ***Apprendi's*** rule is not retroactive at a §2255 proceeding---but omitting the fact that Valdez was actually arguing that appellate counsel was ineffective and that the habeas counsel [on post-habeas reviews] was also ineffective for not addressing that appellate counsel was ineffective for not bringing forth the ***Apprendi*** rule on direct review.

## TWELFTH CAUSE OF ACTION

### DEFENDANT INTERFERED WITH VALDEZ'S RIGHT TO PETITION THE GOVERNMENT AND THE ULTRA-VIRES ACTIONS SUSPENDED THE PRIVILEGE TO THE GREAT WRIT AND THAT OF THE EQUAL PROTECTION CLAUSE

**101.**    The United States court officers [as Does 1-50] illegal conduct during the post-trial and post-habeas civil litigations have interfered and harmed Valdez's right to petition the government for redress of grievances under both the Alaska and United States Constitution and. as a consequence, the defendant's also violated articles of said Constitutions by "suspending" Valdez's rights to the privilege of the habeas corpus and that of the Equal Protection of Laws Clauses.

**102.**    Defendant's judicial court officers clearly violated established law upon the three articles outlined from the State and federal Constitutions when they deliberately and arbitrarily oppressed, impeded, and obstructed upon Valdez, in: 1) not obtaining "a meaningful opportunity" to bring forth his direct appeal claim [that was erroneously procedurally barred due to the Ninth Circuit's framework and appellate counsel ineffectiveness] at an "initial-review" proceeding; 2) petitioning the government for redress of grievances where their ultra-vires conduct have continually oppressed the judicial process by not disclosing factual facts and law and failing in their duty to care; 3) due to the nature of the defendants' ulra-vires conduct they illegally "suspended" Valdez's right to the great writ of habeas corpus under Article §9, Cl. 2; and, 4) not allowing Valdez [as in **_Nordby_**] to supplement the **_Apprendi_** rule as other prisoners at the direct review stage or on at "initial-review" proceeding and on subsequent post-habeas proceedings is in violation of the equal protection of the laws.

- 43 -

## THIRTEENTH CAUSE OF ACTION
## NEGLEGENCE, FORESEEBILITY OF HARM,
## PUBLIC INTEREST AND DAMAGES

**103.**   Plaintiff Valdez re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 102 of this complaint.

**104.**   The defendant's court officers negligently [among others ultra-vires conduct] breach their duty to care by acting in bad faith and unreasonably not exercising ordinary prudence causing injuries and actual monetary loss---Valdez through the last 16 years of litigation has had to pay for copies of the pleadings, copies on the research material, stamps, court fees, and payments to jailhouse lawyers to help and prepare the court filings of the pleadings with both the district court and the Ninth Circuit.

**105.**   The existence of the Defendant's court officers duty to care turns on the basic relationship between the Asst. U.S. Attorney's, the federal judges, and Valdez to cause the action for failure to foresee [when their ultra-vires conduct was not to disclose, to omitting and conceal actual facts] exposed unreasonable the risks and harm the defendant's would cause to Valdez's rights under due process, to prosecute a direct appeal issue at an "initial-review" process,  and where they interfered and precluded upon the privilege of the great writ of habeas corpus  and that of the "equal protection of law" clauses.

**106.**   Public interest demands relief because the illegal conduct by defendant's court officers is capable of repetition since their ultra-vires conduct have circumvented a fair review of the issues, and the issues presented herein are important to public interest in order to justify correction of the defendants' oft-repeated illegal conduct. ***Municipality of Anchorage v. Daily News*, 794 P. 2d 584 - Alaska: Supreme Court 1990.**

- 44 -

### FOURTEENTH CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY; PROLONG DETENTION;
### AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**107.** Plaintiff's Joelson and Valdez re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 106 of this complaint.

**108.** Defendants' court officers [as Does 1-50] breach their fiduciary duty to protect Joelson's and Valdez's state and federal rights when they failed to fulfill their obligatory duty to disclose substantial material facts and law [the proffered material that was disregarded, omitted, and concealed on the government's pleadings and during the inadequate fact-finding process[es] held by the reviewing court's]. Consequently, due to the defendants' outrageous conduct to interfere, obstruct, oppress, and mislead caused a prolong detention to the plaintiffs, severe infliction of emotional distress due to stress from prison surroundings [such as riots, strikes, prisoners hurting others [beatings or killings]], loss of family, health issues, stress from litigation, consortium, and in Joelson's case the loss of his permanent immigration legal status.

### FIFTEENTH CAUSE OF ACTION
### UNITED STATES ILLEGAL
### PATTERN OR POLICIES

**109.** Plaintiff Valdez re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 108 of this complaint.

**110.** Co-plaintiff Joelson found in the middle of March of 2019 ***Protocol 745 from the Department of Justice web-site*** dated May 2002, and respectively updated on 2005 and 2012 justifying an action to Does 1-50 for "***vicarious*** liability," since it brings to light the

- 45 -

Department of Justice  policy/directive to act improperly [continuously from 2002] to influence or encourage the federal courts to refuse to entertain the petitions by a federal prisoner in their opposition pleadings upon post-trial relief requests:

> in order to "*preserve the limitations of the AEDPA and §2255,* ***encourage the district courts 'to refuse' to entertain such ?*** *§2241 petitions for want of jurisdiction, rather than stray into issues they lack jurisdiction to decide, and 'discourage' prisoners from filing such §2241 petitions…* " : **SEE**: E.R. 56.

111.    The defendant's court officers [representing the United States government] not only illegally aided and abetted to oppress, obstruct, conceal, and misrepresent actual facts and law to the federal courts the defendant in addition performed [individually or in concert] their ultra-vires conduct through a pattern and from conflicting policies instituted by the DOJ in order to violate Valdez's fundamental rights and their own obligations to observe: [among others] statutes, establish law, habeas and civil procedural rules, Professional codes of Conduct, and ABA standards.

112.    The USA agency of the DOJ [as Does 1-50] are liable respondeat superiors because the Asst. U.S. Attorney's assigned to represent the United States were motivated by the desire to serve the employer [SEE Protocol 745] and the abuse of transference occurred within the scope of the USA court officers employment---where the transgressions occurred in conjunction with the legitimate litigation activities.

### SIXTEENTH CAUSE OF ACTION

### PLAINTIFFS' TORT IS THE ONLY ALTERNATIVE REMEDY TO CORRECT THE UNITED STATES MISCONDUCT AND FOR DAMAGES TO REMEDY VIOLATIONS UNDER FEDERAL AND STATE LAW

**113.** Plaintiff's Joelson and Valdez re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 112 of this complaint.

**114.** Fundamentally, Joelson's and Valdez's post-trial and post-habeas processes were not held in a manner that is adequate and fair as prescribed under state or federal law to such an extent that plaintiffs are now without an alternative remedy to address or correct the United States court officers misconduct [even though plaintiffs have been diligent in pursuing their litigation over the last 16 and 22 years]: where the defendant either or both failed to apply the appropriate legal framework or interfered and infringed upon the plaintiffs protected rights under state and federal law.

**115.** Due to defendant's court officers [as Does 1-50] ultra-vires oft-repeated conduct to employ an inadequate procedural framework upon the plaintiffs which were prejudicial, harmful, and in violation of state and federal law, and in addition "suspended" the right to prosecute a direct appeal claim and on both the privilege to the great writ of habeas corpus and that of the equal protection of the laws. [9]

///

[9] Because, aside from the fact that plaintiffs have been treated differently [in not having their specific claims adjudicated on the merits where the federal courts ignored and disregarded the proffered non-record material from their fact-finding process as compared to other federal prisoners that would obtain such an adequate judicial review during a post-trial or post-habeas process. AEDPA's exception provisions [due to plaintiffs "unusual" posture through no fault in their part] pursuant to §§2254(d)(2), 2254(b)(1)(B)(i and ii), and 2254(e)(1) are not available or an adequate substitute for a federal prisoner as a state prisoner seeking such claims on federal judicial review---as a consequence, although plaintiffs stand on an "unusual" post-trial and post-habeas posture, there is no corrective process [aside from Rule 60(b)] for federal prisoners to seek relief under the mentioned AEDPA's provisions without demonstrating at a Rule 60(b) proceeding whether the claims are **not** a successive §2255 and that the circumstances are extraordinary: such fundamental restriction upon federal prisoners is **not equal protection under the law.**

- 47 -

**116.**    Considering the USA judicial court officers oft-repeated ultra-vires actions and their constant interference upon plaintiffs rightful post-trial and post-habeas relief request were illegally foreclosed on [in obtaining a meaningful opportunity to be heard] the inadequacy of a *valid and adequate alternative remedy* leads one to recognize that the instant constitutional tort remedy is the only way to assert the plaintiffs violations upon both Alaska's and  California's State Constitution and that of the United States Constitution---specially, since the defendant have adamantly refused [among other violations] to follow habeas, civil, court rules, and law governing those rules for the last 16 and 22 years of litigation, that protective measures must be taken, if not the defendant will continue to abuse the judicial process and the administration of justice..

**SEVENTEENTH CAUSE OF ACTION**

**ALIEN TORT STATUTE**
**Violation of the Law of Nations**
**Upon Joelson, Valdez, and class members**

**116.**    Plaintiff's Joelson and Valdez re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 115 of this complaint.

**117.**    Plaintiffs' and class members are alien foreign nationals---Joelson is from Colombia and Valdez is from Mexico---and due to the defendants' [court officers and Does 1-50] ultra-vires actions they violated a *jus cogens* norm of international law of nations by continually practicing, encouraging, and condoning the arbitrarily detention of the plaintiffs' incarceration and the right to their liberty.

**118.**    Although the Universal Declaration, Art. 9, provides in part that " [n]o one shall be subjected to arbitrary…detention… and deprived of liberty" which the United States has

- 48 -

ratified, the defendant's fundamentally  violated said article 9, even though Article unequivocally obliges states/parties to refrain from "arbitrary detention and depriving liberty."

119.    Defendant's [court officers as Does 1-50] clearly violated norms of international law and the plaintiff's under the Alien Tort Statute ["*ATS*"] lawfully can recover tortious acts committed inside the United States by parties [government court officers] that come under jurisdiction of the United States Courts where the defendant's court officers [and Does 1-50] unlawfully and unjustly arbitrarily detained and deprived the plaintiffs' of their liberty---in Joelson's and Valdez's case they were/are illegally detained for over fifteen years.

120.    Plaintiffs' are entitled under the ATS to the "general implied safe conduct" provision since the defendant's [judicial court officers and Does 1-50] breached the safe conduct norm which is in violation of the law of nations pursuant to the "denial of justice."

121.    Although the plaintiff's [and class members] are foreign nationals within the territory of the United States defendant's [judicial court officers and Does 1-50] have an obligation to provide the plaintiffs' safe conduct by abiding to the constitutional laws of the United States and that of the plaintiffs' countries---the defendant's ultra-vires conduct to arbitrarily prolong their detention and deprive them of liberty is a "denial of justice" [10/]

[16/] International Covenant, Article 9 provides in part; *Everyone has the right to liberty* and security of person. *No one shall be subjected to arbitrary…detention. No one shall be deprived of his liberty* except on such grounds and in accordance with such procedure as are established by law; and, the definition for arbitrary detention is `*if it is not pursuant to law*; it may be arbitrary also *if it is incompatible with the principles of justice* or with the dignity of the human person.'" **Martinez v. City of Los Angeles, 141 F.3d 1373, 1383-84 n.10 (9ᵗʰ Cir. 1998)(**quoting Restatement on Foreign Relations § 702 cmt. h).

- 49 -

under the norms of international law of nations.

## EIGHTEENTH CAUSE OF ACTION
## CLASS ACTION ALLEGATIONS

**122.**.   Plaintiffs bring this action on behalf of themselves and as a class action under

Federal Rule of Civil Procedure 23, seeking damages and equitable relief [under FTCA

and ATS tort] on behalf of current or ex-federal prisoners for which plaintiffs seek

certification.

**123.**   Plaintiffs reserve the right to amend or modify the Class definitions with greater

specificity division after having had an opportunity to conduct discovery by an appointed

counsel.

**124.**   Numerosity: While Plaintiffs do not know the exact number of members of the

Classes, [the members should be approximate to 100 federal prisoners due to the specific

procedural framework imposed and the alternative numerous relief requests that had to be

filed without success in order to be a class member]. Class Members may be identified

through objective means, including data available from the United States Attorney's Office

and the U.S. federal courts docket records within the Ninth Circuit.  Class Members may

be notified of the pendency of this action by recognized Court-approved notice methods,

which include U.S. mail, electronic mail, internet postings, social media and/or published

notice.

**125.**   Commonality and predominance: Common questions of law and fact exist as to

all Class Members. These common questions of law or fact predominate over any questions

affecting only individual members of the Classes. Common questions include, but are not

limited to the following: a) Whether the USA engaged in wrongful conduct as alleged herein; b) Whether the Defendant's court officers conducted their procedures and findings in violation of rules, regulations, and customs; c) Whether the USA caused the class members prolong detention; d) . Whether the Defendant's court officers failed to use the appropriate standard of care while conducting their duties; f) Whether the Defendant omitted the requirement to disclose non-record factual facts and law to the reviewing courts: g) Whether the USA engaged in ultra-vires activities; h) Whether the Defendant's court officers were negligent in their duties, procedural rules, statutes professional conduct, canons, and conduct under the ABA; J) Whether the USA inflicted emotional distress on the Plaintiffs and Class Members; k. Whether the USA engaged to violate the Clauses under "Suspension" and the Equal Protection of the Laws on the Plaintiffs' and Class Members; l. Whether Plaintiffs and Class Members suffered injury and damages as a result of USA court officers ultra-vires conduct; m) Whether Plaintiff and Class Members are entitled to damages, equitable relief and other relief the court deems fair.

**126.** Typicality. Plaintiffs' claims are typical of the claims of the Classes they seek to represent because Plaintiffs and all members of the proposed Classes have suffered similar injuries as a result of the same conduct alleged herein. Plaintiffs have no interests to advance adversely to the interests of the other members of the Classes.

**127** Adequacy: Plaintiffs will fairly and adequately protect the interests of Class Members and an appointed or pro-bono counsel should be retained since [plaintiffs untrained and unscholarly ---as the court can attest by the pleading of this action---on class

actions] the claims alleged herein are of the first impression and complex the pro-bono counsel should be experienced in class actions

**128.** Superiority: A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class Member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendant economically feasible. Even if Class Members could afford individual litigation, those actions would put immeasurable strain on the court system. Moreover, individual litigation of the legal and factual issues of the case would increase the delay and expense to all parties and the court system. A class action, however, presents far fewer management difficulties and provides the benefit of single adjudication, economy of scale and comprehensive supervision by a single court.

**129.** In the alternative, the proposed classes may be certified because: a. the prosecution of separate actions by each individual Class Member would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendant; b. the prosecution of individual actions could result in adjudications that, as a practical matter, would be dispositive of the interests of non-party Class Members or which would substantially impair their ability to protect their interests; and c. Defendant acted or refused to act on grounds generally applicable to the proposed classes thereby making final and injunctive relief appropriate with respect to Class Members.

**130.**    Pursuant to Rule 23(c)(4), particular issues are appropriate for certification because resolution of such issues would advance the disposition of the matter and the parties' interests therein.

**NINETEENTH CAUSE OF ACTION**
**"USA" OFT-REPEATED VIOLATIONS AND THE FORESEEABLE**
**HARM FURTHER RELIEF IS NECESSARY FOR DECLARATORY**
**JUDGMENT, PRELIMINARY INJUNCTION, OR MANDAMUS**

**131.** Plaintiff's Joelson and Valdez re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 130 of this complaint.

**132.**    Under 28 U.S.C. 2201 [and Fed. R. Civ. P. 57 (declaratory Judgment) allows for the existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate. The Court may order a speedy hearing of a declaratory judgment action---as noted by the advisory committee on rules, "the fact that a declaratory judgment may be granted 'whether or not further relief is or could be prayed' indicates that declaratory relief is alternative or cumulative and not exclusive or extraordinary."

**133.**    Plaintiffs on May 13, 2020, after the end of the agencies 6-month period to make a ruling on the plaintiffs filed claims under the 95 form provided the agencies [Chief Counsel, Office of Professional Responsibility and on the Office of the General Counsel for administrative Oversight…of the United States Courts] with a notice of plaintiffs' intent to file suit.

**134.**    Plaintiffs' claims in this suit shows that there are multiple issues with United States that [through its judicial court officers] involved fundamental disputes that have not been resolve over the course of almost two decades of diligent litigation [such as, that plaintiffs

direct appeal claims were not adjudicated on the merits due to procedural framework, that plaintiffs did not have a fair and equitable "initial-review" process as to the direct appeal claims that were not reviewed, the post-trial and post-habeas courts ignored and disregarded from their fact-finding processes the non-record material submitted in support, the Asst. U.S. Attorney's abused the judicial process when they denied the plaintiffs full access to the courts, acting in a manner not according to ABA standards and rules of professional conduct, violating the First, Fourth, Fifth, Sixth, and Eight Amendments of the United States Constitution, when they failed to disclose, omitted, misrepresented, oppressed, impeded, and obstructed the judicial review process to be fair and equitable, thereby denying plaintiffs privilege to the great writ and that of the Equal Protection of the Laws].

**135.**     Plaintiffs seek a preliminary injunction in order for the United States [through its federal judicial court officers from the Southern District of California] to cease and desist in engaging on ultra-vires conduct as they have done constantly and repeatedly over the course of the last two decades of post-habeas litigation---thereby, impeding the new judicial court officers to act fraudulent upon the court as mentioned through-out ¶¶1-134.

**136.**     The granting of plaintiffs request for preliminary injunction will serve the best interest of the general public since there is a real possibility of irreparable harm to the plaintiffs if the injunction is not granted----it must be noted, the United States through its court officers have acted ultra-vires during Joelson's 22 years of post-trial and post habeas

litigation; and, in Valdez's case, the ultra-vires conduct have transgressed for the last 16 years of post-trial and post-habeas litigation.

**137.** Based on the facts of plaintiffs' suit there is a high likelihood of success since there is no other remedy to restrain or control the United States court judicial officers illegal actions---specially, when we recognize the illegal-pattern stated in the last paragraph of the DOJ's policy under Protocol 745.

**138.** Plaintiffs in the alternative seek supervisory mandamus order [under 28 U.S.C. §1361] from the Court upon the Asst. U.S. Attorney's assigned to defend the United States from the Southern District of California to properly fulfill and perform their ministerial official duties [as prescribed by federal law, civil and habeas Rules, policies, ABA standards and those of professional conduct, etc.] and not to act ultra-vires as those judicial court officers did from the U.S. Attorney's Office from both the Central District of California and that from the District of Alaska. [11]

**139.** Plaintiffs "unusual" post-trial and post-habeas posture presents a rare case that mandamus is appropriate to determine the novel questions of procedural law in a new context that is likely to be "oft-repeated" against the plaintiffs or on any of the class members at a future federal forum.

---

[11] Here, the federal procedures adopted by the United States court judicial officers during post-trial and post-habeas relief processes sought by plaintiffs violated [among others] procedural due process when they "offend[ed] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, or transgress[ed] any recognized principle of fundamental fairness in operation. ***District Attorney's Office v. Osborne, 129 S. Ct. 2308    (2009)***

**140.**    The United States [through the court officers] clearly acted erroneously as a matter of law during plaintiffs' post-trial and post-habeas processes that manifest a persistent disregard [among others] of the federal rules and laws of equity and fairness.

**141.**    Plaintiff Joelson seeks permanent legal immigration status, or detainer removal, deferred deportation, or a certification/declaration for a U-visa [during the instant action under review and at the conclusion of the suit] from the United States [either by court officers or the reviewing court] since the non-record demonstrates Joelson was under a complete duress during the conspiracy of the offense, and that the court judicial officers during the post-trial and post-habeas proceedings acted in a manner to obstruct justice, caused unlawful restrain and to prolong Joelson's imprisonment.

**142.**    Plaintiffs and class members have stated herein significant factors to militate in favor of granting mandamus relief to safeguard the plaintiffs' rights that they loss so long ago through no fault in their part.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiffs and on behalf of class members pray judgment against the United States as herein after set forth:

**1.** Certifying the Class as defined above, appointing Plaintiff as class representative and/or the assigned pro-bono counsel as class counsel;

**2.** Declaring and certifying that the United States actions, as set forth herein [as well as those defined in ¶141 that relate to Joelson's his immigration legal status], are unconscionable and illegal, in order to force the United States to make the plaintiffs and

class members whole again---and in Joelson's case, to additionally make him whole upon his permanent immigration legal status.

**3.** Awarding declaratory, injunctive and/or mandamus relief as necessary to protect the interests of Plaintiffs and the class members from the defendants ongoing illegal conduct;

**4.** Awarding under the FTCA actual compensatory and any other damages the Court sees fit to plaintiffs and Class members; and, awarding under the ATS compensatory and punitive damages the jury sees fit to compensate;

**5.** Awarding [if the Court grants the appointment of pro-bono counsel] reasonable attorneys' fees, costs, and other litigation expenses;

**6.** Awarding pre and post-judgment interest, as allowable by law;

**7.** Awarding further proceedings for discovery, deposition, and allowing the plaintiffs to amend their pleadings; and

**8.** Awarding such other proceedings it deems necessary and other relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for all non-federal tort act claims

## CERTIFICATION AND CLOSING

Under Fed. R. Civ. P. 11, by signing below, I certify to the best of my knowledge, information and belief that this complaint: 1) is not being presented for improper purpose, such as to harass, cause unnecessary delay, or needless increase in cost of litigation; 2) is supported by existing law; 3) the factual contentions have evidentiary support or…will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and, 4) the suit otherwise complies with the requirement of Rule 11.

I agree to provide the Clerk's Office with any changes to plaintiffs addresses where case-related papers may be served, I understand that failure by the plaintiffs to keep a current address with the Clerk's Office may result in the dismissal of one of the plaintiffs case.

By,

Maxwell Joelson

Juan Valdez



UNITED STATES POSTAL SERVICE®

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

PRIORITY
★ MAIL ★

FROM:
MAXWELL JOELSON
5121 CAYWOOD ST
SAN DIEGO, CA, 92117

TO:
CLERK OF THE COURT
SOUTHERN DISTRICT OF CALIFORNIA
333 WEST BROADWAY STE, 420
SAN DIEGO, CA, 92101

FOR DOMESTIC AND INTERNATIONAL USE

Label 228, March 2016

CLERK US DISTRICT COURT
AUG 1 3 2020
SOUTHERN DISTRICT OF CALIFORNIA
RECEIVED

To schedule free
Package Pickup,
scan the QR code.



---

UNITED STATES POSTAL SERVICE®

Retail

P

US POSTAGE PAID

$26.70

Origin: 34789
08/10/20
1181750580-05

PRIORITY MAIL 2-DAY®

4 Lb 11.00 oz

1006

EXPECTED DELIVERY DAY: 08/13/20

C037

SHIP
TO:
333 W BROADWAY
STE 420
San Diego CA 92101-3806

USPS TRACKING® NUMBER

9505 5134 4268 0223 6209 66

PRESS FIRMLY TO SEAL

PRESS FI

TYVEK® IS RECYCLABLE.

PE   ©2003, DUPONT™ AND TYVEK® ARE TRADEM